UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RP GOLDEN STATE MANAGEMENT, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>OHIO SECURITY INSURANCE COMPANY,<br><br>            Defendant. | Case No.: 1:19-cv-00600-DAD-JLT<br><br>ORDER GRANTING UNOPPOSED MOTION TO COMPEL NON-PARTY DEPONENT<br><br>(Doc. 37) |

This lawsuit arises from the handling of two insurance claims submitted by Plaintiff RP Golden State Management, LLC to Defendant Ohio Security Insurance Company under its commercial property insurance policy. The primary loss involves alleged wind damage to the roof and resulting water leaks at Plaintiff's hotel located in Bakersfield, California, and the other claim involves alleged vandalism, purportedly caused by a long-term hotel tenant. Since February 2020, Defendant has been attempting to take the deposition of third-party witness, William Harrison. Harrison served as a general contractor at the Plaintiff's hotel, overseeing the extensive hotel remodel which was allegedly delayed because of the wind and vandalism losses. Defendant states that Harrison initially agreed to appear for deposition, but later reversed course.

Defendant seeks the Court to (1) deem Defendant's August 2, 2020 service of a deposition subpoena upon Harrison effectuated; and (2) compel Harrison to appear for deposition on August 14, 2020 (the date set forth in the operative subpoena), or on another date sufficiently in advance of the

1

September 4, 2020 fact discovery cut-off. Plaintiff's counsel does not oppose this motion. For the reasons set forth below, Defendant's motion to compel is **GRANTED**.[1]

## I.     Background and Allegations

This lawsuit arises from the handling of two insurance claims submitted by Plaintiff to Defendant under its commercial property insurance policy. (Doc. 38 at 2.) The primary loss involves alleged wind damage to the roof and resulting water leaks at Plaintiff's hotel located in Bakersfield, California. (Id.) The other claim involves alleged vandalism, purportedly caused by a long-term hotel tenant. (Id.) Defendant never denied coverage for these claims prior to suit being filed. (Id.) Nonetheless, Plaintiff filed the instant complaint asserting causes of action for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) bad faith against Defendant, seeking damages in the 7-figure range. (Id.; see Doc. 1.) Accordingly, Defendant has continued to investigate whether Plaintiff has presented a viable claim for a covered loss through discovery in this litigation. (Doc. 39, Safford Decl., ¶ 2.)

Since February 2020, Defendant has been attempting to take the deposition of third-party witness, William Harrison. (Doc. 38 at 2.) Harrison served as a general contractor at the Plaintiff's hotel, overseeing the extensive hotel remodel which was allegedly delayed because of the wind and vandalism losses. (Id.) The extensive remodel was required by the franchise agreement that Plaintiff had signed with Radisson to upgrade the hotel. (Id.) Harrison has knowledge of the condition of the roof prior to Plaintiff making a claim to Defendant, which is key according to Defendant, because Plaintiff foamed over the allegedly wind-damaged roof before he even reported the claim to Defendant. (Id.) There are also documents reflecting that Harrison told a Farmers insurance adjuster that there was no wind damage to the roof, which has been confirmed by the adjuster in deposition. (Id.) For these reasons, Defendant asserts, Harrison's testimony is critical to the Defendant's defense. (Safford Decl., ¶ 3.)

More than five months ago, Defendant commenced efforts to depose Harrison. (Safford Decl., ¶ 4.) On February 24, 2020, counsel for Defendant spoke with Harrison by phone regarding the need

---

[1] The Court held a hearing on this motion. The moving party, its counsel and Mr. Harrison failed to appear. The Court has learned counsel for the moving party had a technical difficulty that prevented the appearance.

to take his deposition. (Id.) Harrison agreed to appear for his deposition on March 20, 2020, and he further agreed to accept service of a deposition subpoena via email. (Id.) Following the call, counsel for Defendant memorialized this agreement in an email communication to Harrison, attaching the subpoena, and explaining to Harrison that, although he had agreed to electronic service of the subpoena, it would be necessary to personally serve him with the subpoena as well, in accordance with the Federal Rules of Civil Procedure. (Id.; Doc. 39-1.) The subpoena setting Harrison's deposition for March 20, 2020 was personally served upon Harrison on March 16, 2020. (Id., at ¶ 5; Doc. 39-2.)

On March 17, 2020, counsel for Defendant called Harrison to advise that, due to State and County stay-at-home orders resulting from the outbreak of COVID-19, his deposition would need to be postponed. (Safford Decl., ¶ 6.) Harrison agreed to work with Defendant to set a new date for his deposition. (Id.) That same day, counsel for Defendant sent Harrison an email confirming their discussion. (Id.; Doc. 39-3.) Two days later, on March 19, 2020, counsel for Defendant mailed Harrison a letter, again confirming their earlier conversation and asking Harrison to sign an agreement to appear at deposition on a mutually convenient date and time, pursuant to the previously served subpoena. (Id., at ¶ 7; Doc. 39-4.)

On April 1, 2020, having not received the signed agreement to appear at deposition without the issuance of a new subpoena, counsel for Defendant emailed Harrison to inquire about the status of same. (Safford Decl., ¶ 8; Doc. 39-5.) A further email was sent to Harrison on April 15, 2020, again requesting that he execute and return the agreement to appear at deposition. (Id., at ¶ 9; Doc. 39-6.) He failed to do so. (Id.)

On June 11, 2020, counsel for Defendant spoke with Harrison by phone again. (Safford Decl., ¶ 10.) Harrison confirmed his prior commitment to sign the agreement to appear at deposition, to avoid being personally served with a new subpoena. (Id.) In an email that same day, counsel for Defendant memorialized their conversation, and re-sent the requested agreement for Harrison to appear at deposition. (Id.; Doc. 39-7.) Harrison never signed the agreement. (Id.)

On June 24, 2020, counsel for Defendant sent an email to Harrison inquiring as to his availability for deposition on July 14, 15, or 17. (Safford Decl., ¶ 11; Doc. 39-8.) On June 30, 2020, counsel for Defendant spoke with Harrison by phone, yet again, to discuss re-scheduling his

deposition. (Id., at ¶ 12.) Harrison agreed to be deposed on July 22, 2020, to waive personal service of a subpoena for his deposition, and to appear pursuant to the original subpoena personally served upon him. (Id.) This agreement was memorialized in an email communication, as well as in a letter sent via first class mail. (Id.; Doc. 39-9.) Counsel for Defendant requested that Harrison sign the June 30, 2020 letter, acknowledging his agreement to comply with the enclosed subpoena and appear for deposition on July 22, 2020. (Id.) Harrison never signed the letter. (Id.)

On July 1, 2020, counsel for Defendant emailed Harrison a notice of deposition, setting his deposition for the agreed-upon date of July 22, 2020. (Safford Decl., ¶ 13.) Again, counsel for Defendant emphasized the need to receive Harrison's signed acknowledgment to comply with the subpoena, noting that if the executed agreement was not received, it would be necessary to personally serve Harrison with a new subpoena. (Id.; Doc. 39-10.) Harrison never returned the signed agreement. (Id.)

On July 6, 2020, counsel for Defendant sent a follow-up email to Harrison, inquiring about the status of the acknowledgment to comply with the subpoena. (Safford Decl., ¶ 14; Doc. 39-11.) When no response was received, Defendant was forced to commence efforts to personally serve Harrison with a new subpoena, setting his deposition for July 22, 2020. (Id.)

In the evening on July 8, 2020, counsel for Defendant received an email from Harrison that read:

> I am very upset that your unprofessional process server BEAT on my door for over 20 minutes, left notes all over MY HOME, my vehicles including leaning her fat ass all over my brand new, 6 week old $80,000 truck like I am some sort of some deadbeat being sued, I have this all on my cameras.
>
> Being upset is an understatement, I want nothing to do with this frivolous law suit that I had nothing to do with and no knowledge of. If the process server steps foot on my property again, I have an attorney as well and there will be legal consequences. I will also be filing an on-line police report tonight and in attempts of recieving (sic) a restraining order to stop any further harassment.

(Safford Decl., ¶ 15; Doc. 39-12.)

On July 9, 2020, counsel for Defendant sent Harrison a return email, apologizing for any alarm caused by the process server, emphasizing the need for Harrison to return the signed acknowledgment

4

to avoid service of the subpoena, and explaining that, without the signed acknowledgment, Defendant would be left with no alternative but to personally serve him with a new subpoena. (Safford Decl., ¶ 16; Doc. 39-13.)

On July 10, 2020, the process server retained by Defendant, signed a Declaration confirming, in part, that "[a]t approximately 8:02 p.m., [she] received a call from a gentleman yelling at [her] for attempting to serve him this afternoon. During the phone call, the gentleman admitted he was the subject and was belligerent throughout the conversation. He began threatening me to free his dogs on [her] if [she] were to attempt service again . . ." (Safford Decl., ¶ 17; Doc. 39-14, Hefner Decl., ¶ 9.)

Counsel for Defendant sent a follow-up email to Harrison on July 10, 2020, advising that, if the signed acknowledgment was not received by July 13, 2020, efforts to serve him with a new subpoena would be re-commenced. (Safford Decl., ¶ 18; Doc. 39-15.) Harrison failed to respond. (Id.)

On July 31, 2020, a new process server made two trips to Harrison's residence, in an attempt to serve him with a new deposition subpoena, setting a remote deposition for August 14, 2020. (Safford Decl., ¶ 19; Doc. 39-16.) Harrison was not seen on either occasion, so the process server left. (Id.)

On August 2, 2020, as detailed in the process server's affidavit of due diligence, the process server (who had a reference photo of Harrison) saw Harrison exit the front door of his residence. (Doc. 39-16 at 2.) As Harrison was walking toward his truck, the process server approached him and asked, "Are you William Harrison?" (Id.) Harrison responded, "No, I swear to God I'm not William Harrison." (Id.) Thereafter, Harrison sat down in the driver's seat of his truck, refused to accept the subpoena, and was preparing to close the door. (Id. at 3.) The process server announced service and placed the subpoena inside of the truck, and Harrison closed the door. (Id.) As the process server was walking back to his vehicle, Harrison opened the driver's door and let the subpoena fall to the ground. (Id.) Harrison then drove away. (Id.) To keep the papers from blowing away or being destroyed by car traffic, the process server picked up the subpoena and placed it on the door mat at the front door. (Id.; Doc. 39-17.)

On August 4, 2020, counsel for Defendant sent Harrison, by email and overnight mail, a copy of the subpoena, setting his remote deposition for August 14, 2020. (Safford Decl., ¶ 20; Docs. 39-18, 39-19.) Given Harrison's long-standing refusal to sign an acknowledgement to appear for deposition

5

without a subpoena, along with his recent combative behavior, his efforts to falsify his identity, and his decision to allow the subpoena to fall out of his truck onto the street, Defendant has substantial cause to believe that Harrison will not appear for his deposition on August 14, 2020. (Id., at ¶ 21.)

**II.      Discovery and Requests**

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence.  Fed. R. Civ. P. 26(b) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevant evidence is defined as evidence having "any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Fed. R. Evid. 401.  Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

**A.      Request to Compel Testimony**

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, "[a] party may, by oral questions, depose any person, including a party, without leave of court" by serving proper notice. If "a deponent fails to answer a question asked under Rule 30 or 31," the propounding party may make a motion to compel an answer. Fed. R. Civ. P. 37(a)(3)(B)(i). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The Court is authorized to issue sanctions for a party's failure to appear for a deposition under Rule 37(d), which provides in relevant part: "if a party . . . fails, after being served with proper notice, to appear for that person's deposition. . . [s]anctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Such orders include striking pleadings, dismissing the action, or other "just orders." Fed. R. Civ. P. 37(b)(2)(A).

### B. Subpoenas for Deposition

Under Rule 45 of the Federal Rules of Civil Procedure, a subpoena may be issued requiring a nonparty to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). In addition, any party may serve a subpoena that commands a non-party "to produce documents, electronically stored information, or tangible things . . ." Fed. R. Civ. P. 45(a)(1)(C). Subpoenas are subject to the relevance requirements of Rule 26(b), and therefore may command the production of documents which are "nonprivileged [and] . . . relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Once a nonparty has been properly served with a Rule 45 subpoena, the nonparty "may (1) comply with the subpoena, (2) serve an objection on the requesting party in accordance with Civil Rule 45(c)(2)(B), or (3) move to quash or modify the subpoena in accordance with Civil Rule 45(c)(3)." In re Plise, 506 B.R. 870, 878 (2014) (citation omitted). If a nonparty serves a written objection to the subpoena, the party seeking the deposition must obtain a court order that directs the nonparty to comply with the subpoena. Id. (citations omitted). Even if a nonparty does not serve a written objection or move to quash, "the more prudent practice for the court is to issue such an order before entertaining a motion for contempt." United States Sec. Exch. Comm'n. v. Hyatt, 621 F.3d 687, 694 (7th Cir. 2010) (citation omitted).

### III. Discussion and Analysis

#### A. Service of Subpoena on William Harrison

Defendant asserts that the subpoena was hand-served on Harrison on August 2, 2020, notwithstanding the fact that he denied his identity and, ultimately, allowed the subpoena to fall out of his car. (Safford Decl. ¶ 19; Docs. 39-16, 39-17.) After the subpoena fell to the ground, the process server placed the subpoena on Harrison's front door mat. (Id.) The subpoena was also emailed to Harrison, and mailed to Harrison via overnight mail, on August 4, 2020. (Safford Decl., ¶ 20; Docs. 39-18, 39-19.) Defendant asserts that there can be no question that Harrison has actual knowledge of the subpoena, and of his legal obligation to appear for a remote deposition on August 14, 2020. (Doc. 38 at 7.) Yet, he has made clear that he "want[s] nothing to do with this frivolous law suit." (Safford Decl., ¶ 15; Doc. 39-12.) Defendant seeks an order confirming that the August 2, 2020 personal service of the

subpoena upon Harrison, the August 4, 2020 email service of the subpoena upon Harrison, and the August 4, 2020 overnight mail service of the subpoena upon Harrison, collectively, constitute effective service. (Doc. 38 at 7.)

Federal Rule of Civil Procedure 45 governs subpoenas issued to third parties. Rule 45(b) provides that "[s]erving a subpoena requires delivering a copy to the named person[.]" Fed. R. Civ. P. 45(b)(1). The majority rule is that Rule 45 requires personal service, as opposed to service by mail. Chima v. U.S. Dep't of Def., 23 F. App'x 721, 724 (9th Cir. 2001) ("service by mail rather than by personal service" of subpoena duces tecum on defense witnesses held improper); In re: Ex Parte Appl. of Pro-Sys Consultants & Neil Godfrey, 2016 WL 6025155, at *1 (N.D. Cal. Oct. 14, 2016) (collecting cases). However, a growing but still minority trend among courts has been to allow substitute service of a Rule 45 subpoena via alternative methods, such as mail delivery pursuant to a court order. In re Pro-Sys Consultants, 2016 WL 6025155, at *2 (collecting cases); Khan v. Rogers, 2018 WL 5849010, at *4 (N.D. Cal. Nov. 6, 2018) (recognizing trend permitting service by mail pursuant to court order). "Courts are more inclined to grant such alternative service where the serving party has provided sufficient evidence of its earlier diligence in attempting to effectuate personal service." Fujikura Ltd. v. Finisar Corp., 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015) (citing Toni Brattin & Co. v. Mosaic Int'l, LLC, 2015 WL 1844056, at *4 (N.D. Cal. Apr. 9, 2015)).

Defendant contends that since February 2020, Harrison was personally aware of Defendant's efforts to notice his deposition, at first voluntarily and then due to his failure to sign off on an agreement to appear, through compelling his attendance via subpoena. (Safford Decl., ¶¶ 4-20.) Additionally, the subpoena setting Harrison's deposition for March 20, 2020 was personally served upon Harrison on March 16, 2020. (Id., at ¶ 5; Doc. 39-2.) The only reason Harrison's deposition was not completed in March 2020 was due to the issuance of stay-at-home orders resulting from the COVID-19 pandemic. (Id., at ¶ 6.) Thereafter, Defendant again attempted to reschedule his deposition without the need for a new subpoena, and when Harrison failed to sign-off, Defendant proceeded again with formal service. (Doc. 38 at 8.) Those service efforts resulted in the process server announcing service and placing the papers in Harrison's truck on August 2, 2020, but Harrison attempted to discard them. (Safford Decl., at ¶¶ 4-19; Docs. 39-16, 39-17.) Defendant alleges that Harrison was personally

1  served with the subpoena, despite his rejection thereof. (Doc. 38 at 8.)

2        Defendant has provided evidence of its diligence in its efforts to serve Harrison and has shown
3  that Harrison has attempted to evade service of the subpoena. As noted above, Harrison was personally
4  aware of Defendant's efforts to notice his deposition since February 2020, counsel for Defendant
5  contacted Harrison numerous times both by phone and email correspondence regarding the deposition,
6  and Harrison was actually personally served with a subpoena on March 16, 2020 setting his deposition
7  on March 20, 2020. (Safford Decl., at ¶¶ 4-20.) Additionally, it appears that Harrison attempted
8  to evade personal service. After the deposition could not be completed in March 2020 due to the
9  issuance of stay-at-home orders resulting from the COVID-19 pandemic, Defendant attempted to
10 reschedule the deposition without the need for a new subpoena. (Safford Decl., at ¶¶ 6-14.) However,
11 after Harrison failed to sign off, Defendant proceeded again with formal service. On July 8, 2020, one
12 process server attempted to personally serve Harrison. (Hefner Decl., at § 8.) On July 31, 2020, a new
13 process server made two trips to Harrison's residence to serve him. (Doc. 39-16 at 2.) The process
14 server then made another attempt on August 2, 2020, which resulted in the process server announcing
15 service and placing the papers in Harrison's truck, but Harrison attempted to discard them. (Id. at 2-3.)
16 "Under these circumstances, the Court finds that Rule 45 should be construed as provided in Rule 1 'to
17 secure the just, speedy, and inexpensive determination of every action,' which would allow for alternate
18 means of service." Toni Brattin, 2015 WL 1844056, at *4 (citation omitted). Indeed, the Court "agrees
19 that the Federal Rules of Civil Procedure should not be construed as a shield for a witness who is
20 purposefully attempting to evade service." Id. at *3.

21       Additionally, on August 4, 2020, counsel for Defendant sent Harrison, by email and overnight
22 mail, a copy of the subpoena, setting his remote deposition for August 14, 2020. (Safford Decl., ¶ 20;
23 Docs. 39-18, 39-19.) See id. at *10 ("Service by certified mail comports with due process as it is
24 reasonably calculated under the circumstances to provide Respondents with both notice and an
25 opportunity to present objections.") (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,
26 314 (1950)).

27       Based on these efforts outlined above, the Court finds that Defendant has effectuated service of
28 the subpoena upon Harrison, setting a remote deposition for August 14, 2020.

**B.     Request to Compel Testimony of William Harrison**

Defendant requests the Court to compel Harrison to appear for deposition before the September 4, 2020 discovery cut-off. (Doc. 38 at 9-10.) Defendant asserts that the subpoena was personally served upon Harrison on August 2, 2020 and was served by email and mail on August 4, 2020. (Safford Decl., ¶¶ 19-20; Docs. 39-16 - 39-19.) However, Defendant asserts, Harrison refuses to comply with the deposition process, and he repeatedly gave false assurances that he would appear for deposition pursuant to a previously served subpoena. (Id., at ¶¶ 6-13.) Additionally, Defendant alleges that Harrison evaded attempts to personally serve him, he harassed and threatened Defendant's process servers, and he has made clear that he wants nothing to do with this lawsuit, even threatening to file a police report and/or seek a restraining order to prevent further attempts to subpoena him. (Hefner Decl.; Docs. 39-12, 39-16.)

The Court finds that the deposition of the non-party witness would provide relevant evidence, as set forth by the Federal Rules of Civil Procedure and Evidence. Defendant asserts that Harrison served as a general contractor at the Plaintiff's hotel, overseeing the extensive hotel remodel which was allegedly delayed because of the wind and vandalism losses. (Doc. 38 at 2.) Defendant alleges that Harrison has knowledge of the condition of the roof prior to Plaintiff making a claim to Defendant, which is key according to Defendant, because Plaintiff foamed over the allegedly wind-damaged roof before he even reported the claim to Defendant. (Id.) Defendant also claims that there are also documents reflecting that Harrison told a Farmers insurance adjuster that there was no wind damage to the roof, which has been confirmed by the adjuster in deposition. (Id.) For these reasons, Defendant asserts, Harrison's testimony is critical to the Defendant's defense. (Safford Decl., ¶ 3.)

Given the lack of cooperation by Harrison as detailed above, including but not limited to Harrison refusing to sign an acknowledgment to appear for deposition pursuant to an earlier-served subpoena, evading service of a new subpoena, denying his identity and rejecting the subpoena when he was personally served, threatening and harassing process servers, and expressing his intent to involve the police and/or obtain a restraining order if further service attempts are made, Defendant's request to compel Harrison to appear and testify at a deposition is **GRANTED**.

///

**IV.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1. Defendant's motion to compel is **GRANTED**;
2. William Harrison **SHALL** appear and testify at a deposition conducted via videoconference on September 4, 2020;
3. Within three days, Defendant SHALL serve Mr. Harrison via overnight mail a copy of:
   a. this order;
   b. a deposition subpoena requiring his deposition testimony on September 4, 2020 at 9 a.m. via videoconference;
   c. the necessary details for joining the deposition videoconference.

IT IS SO ORDERED.

Dated:   **August 17, 2020**                     /s/ Jennifer L. Thurston
                                                                        UNITED STATES MAGISTRATE JUDGE